UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FRED NEKOUEE, individually,           :
                                          :
                Plaintiff,             :
                                          :
vs.                                     :   Case No. 4:20-cv-0135
                                        :
GURU NANAK INVESTMENTS, LLC,   :
an Arizona limited liability company,   :
                                        :
                Defendant.        :
_____/

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, as a mobility impaired individual (sometimes referred to as "Plaintiff"), hereby sues the Defendant, GURU NANAK INVESTMENTS, LLC, an Arizona limited liability company (sometimes referred to as "Defendant"), for declaratory and injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.      Defendant's property, Holiday Inn Express, has an address of 13735 Riverport Drive, Maryland Heights, Missouri 63043 and is located in the County of St. Louis ("Holiday Inn Express").

3.      Venue is proper in the Eastern District of Missouri because the situs of the property lies in this judicial district.   The Defendant's property is located in and does business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Defendant owns, leases, leases to, or operates a place of public accommodation, the Holiday Inn Express, as defined by the ADA, 42 U.S.C. § 12181(7)(A), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

6.      The Holiday Inn Express is a place of lodging.

7.       The Holiday Inn Express is a place of public accommodaition.

8.      Defendant is responsible for complying with the obligations of the ADA.

9.       Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis, weak limbs, and requires the use of a wheelchair for mobility.

10.      Mr. Nekouee travels to the St. Louis metropolitan area every three to six months to visit heavy equipment dealerships, where he assists his brother to compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment.

11.       Plaintiff Fred Nekouee has visited the St. Louis area near the Holiday Inn Express in June 2015, June 2016, September 2017, December 2017, March 2018, July 2018, September 2018, January 2019, May 2019, and September 2019.

12.      Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the Holiday Inn Express which forms the basis of this lawsuit on May 15, 2019 (check in) and May 16, 2019 (check out).

13.       Plaintiff visited the area near the Holiday Inn Express again on September 15, 2019.

14.     Fred Nekouee plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to the heavy equipment dealerships he visits in the St. Louis area and close to the airport.

15.      Fred Nekouee has definite plans to return to the St. Louis area in March 2020.

16.      The Plaintiff, Mr. Nekouee, likes to stay at moderately-priced hotels like the Holiday Inn Express near the heavy equipment dealerships he visits.

17.     For the reasons set forth in paragraphs 10 through 16 and 27 of this Complaint, Mr. Nekouee plans to return to the Holiday Inn Express.

18.      The Plaintiff has encountered architectural barriers at the subject property.  The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability to access the property due to excessively steep slopes in parking spaces for the disabled, in access aisles and of walking surfaces, and have impaired his use of the restrooms in the lobby and accessible guestroom Holiday Inn Express.

19.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

20.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

21.     The running slope of the access ramp outside of the front of the hotel lobby is steeper than 1:12.

22.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

23.     On his visit to the Holiday Inn Express, the Plaintiff encountered a close slope

steeper than 1:48 of the access aisle that is adjacent to the walking surface along the accessible route to the hotel entrance.

24. The Plaintiff encountered barriers to access the restroom in the accessible room 235 of the Holiday Inn Express.

25. The Plaintiff is deterred from visiting the Holiday Inn Express, even though the Holiday Inn Express is close to the heavy equipment dealerships he visits in the area, because of the difficulties he will experience in the lobby, accessible room 235, parking lot, access aisle(s) and walking surfaces (sidewalks) until the property is made accessible to him in a wheelchair.

26. Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 32 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

27. Fred Nekouee desires to visit the Holiday Inn Express not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

28. The Defendant has discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

29. The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000

4

or less).

30.     Preliminary inspections of the Holiday Inn Express have shown that violations exist.

31.     Physical conditions that exist at the Property are accurately described in each subsection designated with a romanette "(i)" in each lettered subparagraph of paragraph 32 below.

32.     The violations that Fred Nekouee personally encountered or observed on his visit to the Holiday Inn Express include, but are not limited to:

**PARKING AREA**

a.  (i) In the parking lot, there are no upright signs with the words "van accessible" or "van."   (ii) In the parking lot, there are no parking spaces for disabled patrons with van accessible signage, in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   (iii) Due to the lack of van accessible signage, the Plaintiff had difficulty finding a parking space, and it constitute a barrier to access in that it appears that the Holiday Inn Express does not offer van accessible parking, and such lack of signage deters him from visiting Holiday Inn Express.   (iv) The action required to install signage that indicates that a parking space is van accessible is easily accomplishable and able to be carried out without much difficulty or expense.

b.   (i) In the parking lot, the parking spaces for disabled patrons do not have an adjacent access aisle.   (ii) The parking spaces for disabled patrons does not have an adjacent access aisle, in violation of Federal Law 2010, ADAAG §§ 502.1 and 502.3.3. (iii) Due to the lack of an adjacent access aisle, the Plaintiff had difficulty getting out of and back into his vehicle.   (iv) The action required to restripe this portion of the parking lot to include an access aisle adjacent to these parking spaces is easily accomplishable and

able to be carried out without much difficulty or expense.

c.    (i) In the parking lot, the access aisle adjacent to the walking surface has a cross slope steeper than 1:48 and steeper than 3.1%.   (ii) The cross slope of this access aisle is steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered this cross slope and it made his wheelchair unstable.   (iv) The action required to reduce the slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

d.    (i) The running slope of the access ramp outside of the front of the hotel lobby is steeper than 1:12 and steeper than 9%.   (ii) The running slope of the access ramp outside of the front of the hotel lobby is steeper than 1:12 and steeper than 11%, in violation of Federal Law 2010, ADAAG § 405.2.   (iii) While moving in his wheelchair, the Plaintiff encountered this access ramp, and due its steep running slope he required assistance to ascend and to descend this ramp.   (iv) The action required to reduce the slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.

e.    (i) The running slope of the transition from the access aisle to the walking surface shown in the photograph below is steeper than 1:12.   (ii) The running slope of the transition from the access aisle to the walking surface shown in the photograph below is steeper than 1:12 and steeper than 13%, in violation of Federal Law 2010, ADAAG § 405.2.   (iii) While moving in his wheelchair, the Plaintiff encountered this steep slope and he required assistance to move over it.   (iv) The action required to reduce the slope of the transition from the access aisle to the walking surface is easily accomplishable and able to be carried out without much difficulty or expense.



f.    (i) The slopes of the curb ramp flares to the access ramp to the main entrance of the hotel are steeper than 1:10 (10%) and are steeper than 11%.   (ii) The slopes of the curb ramp flares to the access ramp to the main entrance are steeper than 1:10 (10%) and are steeper than 20%, in violation of Federal Law 2010, ADAAG § 406.3.   (iii) Due to the steep slopes of these curb ramp flares, the Plaintiff had to take measures to avoid them to prevent his wheelchair from overturning.   (iv) The action required to reduce the slopes of these curb ramp flares is easily accomplishable and able to be carried out without much difficulty or expense.

**ENTRANCE DOOR**

g.    (i) The time for the lobby door to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The time for the lobby door to close

from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds and is about 3 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) Due to the time it takes for this door to close, the Plaintiff could not make it all of the way through this door before the door closed on his wheelchair.   (iv) The action required to adjust the door closer is easily accomplishable and able to be carried out without much difficulty or expense.

h.   (i) The force needed to open the entrance door is more than 5 pounds.  (ii) The force needed to open the entrance door is about 15 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9. (iii) Due to the force necessary to open this door, the Plaintiff required assistance in his wheelchair to open this door.   (iv) The action required to adjust the closing force of this entrance door is easily accomplishable and able to be carried out without much difficulty or expense.

i.   (i) The threshold of the door to the lobby is higher than 0.75 inches.  (ii) The threshold of the door to the lobby is higher than 0.75 inches for existing or altered doorways, in violation of Federal Law 2010, ADAAG § 404.2.5.   (iii) Due to the height of this threshold, the Plaintiff required assistance to move his wheelchair over this threshold.   (iv) The action required to reduce the height of this threshold is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN THE LOBBY**

j.   (i) The force needed to open the entrance door to the men's restroom in the lobby is more than 5 pounds.  (ii) The force needed to open the entrance door to the men's

restroom in the lobby is about 12 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff required assistance in his wheelchair to open this door.   (iv) The action required to adjust the closing force of this entrance door is easily accomplishable and able to be carried out without much difficulty or expense.

k.   (i) The time for the entrance door to the men's restroom to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The time for the entrance door to the men's restroom to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds and is about 3 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) Due to the time it takes for this door to close, the Plaintiff could not make it all of the way through this door before the door closed on his wheelchair.   (iv) The action required to adjust the door closer is easily accomplishable and able to be carried out without much difficulty or expense.

l.   (i) For the accessible toilet compartment in the men's restroom in the lobby, the door pull side maneuvering clearance in a latch approach perpendicular to the doorway is less than 48 inches.   (ii) As shown in the photograph below, for the accessible toilet compartment in the men's restroom in the lobby, the door pull side maneuvering clearance in a latch approach perpendicular to the doorway is less than 48 inches and is only about 38 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to the lack of door pull side maneuvering clearance, the Plaintiff required assistance to enter the accessible toilet compartment.   (iv) The action required to relocate the baby changing station to create more pull side maneuvering clearance is easily accomplishable and able

to be carried out without much difficulty or expense.



m.     (i) In the men's restroom in the lobby, the door to the accessible toilet compartment does not have a door pull on both sides of the door near the latch.   (ii) In the men's restroom in the lobby, the door to the accessible toilet compartment does not have a door pull on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull, the Plaintiff could not fully close the door to the accessible toilet compartment when he used the toilet.   (iv) The action required to install door pulls is easily accomplishable and able to be carried out without much difficulty or expense.

n.     (i) In the men's restroom in the lobby, the accessible toilet compartment is less than 60 inches wide.   (ii) In the men's restroom in the lobby, the accessible toilet compartment is less than 60 inches wide and is only about 38 inches wide as shown in the photograph below, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3.   (iii) Due to the narrow width of this accessible toilet compartment, the Plaintiff required assistance to enter and to exit the toilet compartment.   (iv) The action required to increase

the width of the accessible toilet compartment is easily accomplishable and able to be carried without much difficulty or expense.



o.    (i) In the men's restroom in the lobby, the rear wall grab bar is less than 36 inches long.  (ii) In the men's restroom in the lobby, the rear wall grab bar is less than the minimum of 36 inches long and is only about 24 inches long as shown in the photograph below, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) Due to the short length of this rear wall grab bar, the Plaintiff had difficulty using it to position himself to sit on the toilet.   (iv) The action required to replace this rear wall grab bar is easily

accomplishable and able to be carried out without much difficulty or expense.



p.      (i) In the men's restroom in the lobby, the side wall grab bar is less than 42 inches

long.   (ii) In the men's restroom in the lobby, the side wall grab bar is less than the

minimum required length of 42 inches and is only about 37 inches long, in violation of

Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the short length of this side wall grab

bar, the Plaintiff had difficulty using it to position himself to sit on the toilet and to get up

from the toilet.   (iv) The action required to replace this side wall grab bar is easily

accomplishable and able to be carried out without much difficulty or expense.

q.    (i) In the men's restroom in the lobby, the side wall grab bar extends less than 54 inches from the rear wall.   (ii) In the men's restroom in the lobby, the side wall grab bar does not extend at least 54 inches from the rear wall and only extends about 49 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the lack of adequate extension from the rear wall, the Plaintiff had difficulty using the side wall grab bar to position himself to use the toilet and to get back up from the toilet.   (iv) The action required to replace and properly locate a side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

r.    (i) In the men's restroom in the lobby, the top gripping surface of the rear wall grab bar is higher than 36 inches above the floor.   (ii) In the men's restroom in the lobby, the top gripping surface of the rear wall grab bar is higher than a maximum of 36 inches above the finish floor and is about 44.5 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 609.4.   (iii) Due to the height of the top gripping surface of this rear wall grab bar above the floor, the Plaintiff had difficulty using it to position himself to use the toilet.   (iv) The actions required to relocate the flush control to the toilet and to replace and properly locate a rear wall grab bar are easily accomplishable and able to be carried out without much difficulty or expense.

s.    (i) In the men's restroom in the lobby, the coat hook in the accessible toilet compartment is higher than 48 inches above the floor.   (ii) In the men's restroom in the lobby, the coat hook is higher than a maximum of 48 inches above the finish floor and is about 66 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4. (iii) Due to the height of this coat hook above the floor, the Plaintiff tried but could not

hang up clothing on it.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

t.   (i) In the men's restroom in the lobby, the change in level between the floor drain and the tile flooring is greater than 0.5 inches.   (ii) In the men's restroom in the lobby, the change in level between the floor drain to the tile flooring is greater than 0.5 inches, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.   (iii) The Plaintiff observed this change of level at the floor drain and it deters him from staying at the Holiday Inn Express.   (iv) The action required to raise the floor drain is easily accomplishable and able to be carried out without much difficulty or expense.

**BREAKFAST AREA**

u.   (i) The counter tops in the breakfast area are all higher than 36 inches above the floor.   (ii) A portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is not provided in the breakfast area, in violation of Federal Law 2010, ADAAG § 904.4.1.   (iii) Due to the height of the counter tops in the breakfast area above the floor, the Plaintiff had difficulty reaching items and could not reach certain breakfast items on the counters.   (iv) The action required to modify a portion of the counter to a maximum height of 36 inches above the finish floor is easily accomplishable and able to be carried out without much difficulty or expense.

v.   (i) In the breakfast area, the handle to the hot water dispenser, the milk cartons and yogurt on the top rack of the mini-fridge, the juice machine dispenser buttons, the jam packets, the tea bags, coffee mate, the lid to the pancake machine, and the muffins are all higher than 48 inches above the floor.   (ii) In the breakfast area, the handle to the hot water dispenser, the milk cartons and yogurt on the top rack of the mini-fridge, the juice machine

dispenser buttons, the jam packets, the tea bags, coffee mate, the lid to the pancake machine, and the muffins are all higher than 48 inches above the finish floor where the reach depth is less than 20 inches, and are all outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to the height of these items above the floor, the Plaintiff tried but could not reach them from his wheelchair.   (iv) The actions required to relocate these items and to put a written policy in place to so that they are in the reach range of an individual in a wheelchair are easily accomplishable and able to be carried out without much difficulty or expense.

**ACCESSIBLE GUESTROOM 235**

w.   (i) The operation of the lock on the entrance door to accessible guestroom 235 requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of the lock on the entrance door to accessible guestroom 235 requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 404.2.7 and 309.4 (iii) The Plaintiff tried but could not operate this door lock with a closed fist or loose grip. (iv) The action required to replace this door lock is easily accomplishable and able to be carried out without much difficulty or expense.

x.   (i) The time for the entrance door to accessible guestroom 235 to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The time for the entrance door to accessible guestroom 235 to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds and is about 3 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) Due to the time it takes for this door to close, the Plaintiff could not make it all of the way through this door before the door closed on his wheelchair.   (iv) The action required to adjust the door closer is easily

accomplishable and able to be carried out without much difficulty or expense.

y.    (i) In accessible guestroom 235, the entrance door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than 12 inches.   (ii) In accessible guestroom 235, the entrance door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway for a door with a latch and closer is less than 12 inches and is only about 6 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to this lack of pull side maneuvering clearance, the Plaintiff required assistance to exit the room in his wheelchair.   (iv) The action required to increase this pull side maneuvering clearance by having the door open from the other side of the doorway is easily accomplishable and able to be carried out without much difficulty or expense.

z.    (i) In accessible guestroom 235, the security latch for the entrance door is higher than 48 inches above the floor.   (ii) In accessible guestroom 235, the security latch for the entrance door is higher than 48 inches above the finish floor and is about 64 inches above the finish floor, and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) Due to the height of this security latch above the floor, the Plaintiff tried but could not secure the latch from his wheelchair.   (iv) The action required to relocate this security latch is easily accomplishable and able to be carried out without much difficulty or expense.

**RESTROOM IN ACCESSIBLE GUESTROOM 235**

aa.    (i) The operation of the handle to the restroom door in accessible guestroom 235 requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of the handle to the restroom door in accessible guestroom 235 requires tight grasping, pinching or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 404.2.7 and 309.4.

(iii) The Plaintiff tried but could not open the door with a loose grip or closed fist.   (iv) The action required to replace this door hardware is easily accomplishable and able to be carried out without much difficulty or expense.

bb.   (i) The door opening to the restroom in accessible guestroom 235 is less than 32 inches wide.   (ii) The door opening to the restroom in accessible guestroom 235 does not have a clear width of a minimum of 32 inches and is only about 22 inches wide, in violation of Federal Law 2010, ADAAG § 404.2.3.   (iii) Due to the lack of clearance width of the door opening to this restroom, the Plaintiff could not enter the restroom in his wheelchair. (iv) The action required to increase the width of this door opening is easily accomplishable and able to be carried out without much difficulty or expense.

cc.   (i) In the restroom of accessible guestroom 235, the shower does not conform to the standards of a transfer type shower or a roll-in shower, as it does not have the clearance length parallel to the shower of at least 36 inches and does not have a seat, and does not have at least a 60-inch entry on the face of the shower compartment and grab bars on three walls.   (ii) In the restroom of accessible guestroom 235, the shower does not conform to the standards of a transfer type shower or a roll-in shower, as it does not have the clearance length parallel to the shower of at least 36 inches and does not have a seat, and does not have at least a 60-inch entry on the face of the shower compartment and grab bars on three walls, in violation of Federal Law 2010, ADAAG §§ 608.2.1 and 608.4, or 608.2.3 and 608.3.2.   (iii) Due to the lack of clearance width to the open end of the shower, the lack of seating, and the lack of grab bars on three walls, the Plaintiff required assistance to use the shower.   (iv) The actions required to make this shower ADA compliant are easily accomplishable and able to be carried out without much difficulty or expense.

dd.   (i) In the restroom in accessible guestroom 235, the rear wall grab bar is less than 36 inches long.   (ii) In the restroom in accessible guestroom 235, the rear wall grab bar is less than a minimum of 36 inches long and is only about 24 inches long, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) Due to the short length of this rear wall grab bar, the Plaintiff had difficulty positioning himself to sit on the toilet.   (iv) The actions required to replace this rear wall grab bar and to reposition the sink are easily accomplishable and able to be carried out without much difficulty or expense.

ee.   (i) In the restroom of accessible guestroom 235, the space between the top surface of the rear wall grab bar and the bottom of the paper towel rack above it is less than 12 inches.   (ii) In the restroom of accessible guestroom 235, the space between the top surface of the rear wall grab bar and the bottom of the paper towel rack above it is less than 12 inches, in violation of Federal Law 2010, ADAAG § 609.3.   (iii) Due to the lack of space between the rear wall grab bar and the towel rack above it, the Plaintiff had difficulty using the rear wall grab bar to help position himself to sit on the toilet.   (iv) The action required to relocate this towel rack is easily accomplishable and able to be carried out without much difficulty or expense.

ff.   (i) In the restroom in accessible guestroom 235, the distance from the centerline of the toilet to the side wall is not between 16 and 18 inches.   (ii) In the restroom in accessible guestroom 235, the distance from the centerline of the toilet to the side wall is not between 16 and 18 inches and is about 43 inches, in violation of Federal Law 2010, ADAAG § 604.2.   (iii) Due to the distance from the toilet to the side wall, the Plaintiff could not reach the toilet paper from a normal sitting position on the toilet.   (iv) The action required to reconfigure the fixtures in this restroom is easily accomplishable and able to be

18

carried out without much difficulty or expense.

gg.   (i) In the restroom of accessible guestroom 235, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) In the restroom of accessible guestroom 235, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the finish floor and is about 52 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   (iii) Due to the height of this mirror's reflecting surface above the floor, the Plaintiff could not see his face in this mirror from his wheelchair.   (iv) The action required to relocate this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

**POOL ENTRANCE**

hh.   (i) The entrance to the pool area does not have signage with the International Symbol of Accessibility.   (ii) The entrance to the pool area does not have signage with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG § 216.6 and 703.7.2.1.   (iii) The Plaintiff observed the lack of signage with the International Symbol of Accessibility at the entrance to the pool, and this lack of signage constitutes a barrier to access in that it does not appear to the Plaintiff that the pool area is accessible. This lack of signage deters him from staying at the Holiday Inn Express.   (iv) The action required to install signage with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

**LAUNDRY**

ii.   (i) In the laundry room, the clear floor space between the air conditioning unit and the washing machine is less than 30 inches.   (ii) In the laundry room, the clear floor space between the air conditioning unit and the washing machine is less than 30 inches, in

violation of Federal Law 2010, ADAAG § 305.   (iii) Due to the lack of clear floor space between the air conditioning unit and the washing machine, the Plaintiff could not move his wheelchair past the air conditioning unit.   (iv) The action required to relocate the air conditioning unit or the washing machines is easily accomplishable and able to be carried out without much difficulty or expense.

**FITNESS CENTER**

jj.    (i) The entrance to the fitness center does not have signage with the International Symbol of Accessibility.   (ii) The entrance to the fitness center does not have signage with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG § 216.6 and 703.7.2.1.   (iii) The Plaintiff observed the lack of signage with the International Symbol of Accessibility at the entrance to the fitness center, and this lack of signage constitutes a barrier to access in that it does not appear to the Plaintiff that the fitness center is accessible.   This lack of signage deters him from staying at the Holiday Inn Express. (iv) The action required to install signage with the International Symbol of Accessibility is easily accomplishable and able to be carried out without much difficulty or expense.

33.    All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

34.    The discriminatory violations described in paragraph 32 are not an exclusive list of the Defendant's ADA violations.   Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.

35.    The individual Plaintiff, and all other individuals similarly situated, have been

denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

36.     Defendant has discriminated against the individual by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

37.     Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

38.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

39.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

40.     Defendant is required to remove the existing architectural barriers to the physically

disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

41.    Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

42.    Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter the Holiday Inn Express and adjacent parking lot spaces, access aisle(s), and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.    The Court issue a Declaratory Judgment that determines that the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted,

s/Robert J. Vincze
Robert J. Vincze (MO #37687)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*

23